IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

        Plaintiff,

  v.

JACOB A. AZEVEDO,

        Defendant.
_____/

NO.  CR. S-10-MJ-0058 DAD

ORDER RE DEFENDANT'S MOTION
TO SUPPRESS EVIDENCE

**INTRODUCTION**

On May 18, 2010, the court held an evidentiary hearing on the motion to suppress evidence filed in the above-entitled action on behalf of defendant Jacob Azevedo.  Bob Sweeten, Certified Law Student, appeared on behalf of the United States, Jared Stephenson, Certified Law Student, of the Federal Defender's Office appeared on behalf of the defendant.

Following the evidentiary hearing, the court requested supplemental briefing with respect to the government's argument that the defendant had given implied consent to the search of his

1

belongings by entering onto a National Wildlife Refuge to hunt.  On June 22, 2010, the court heard further oral argument with respect to the motion.  For the reasons set forth below, defendant Azevedo's motion to suppress evidence will be granted.

## **FACTS**[1]

Defendant Jacob Azevedo is charged in this misdemeanor action with possession of marijuana on a national wildlife refuge in violation of 50 C.F.R. § 27.82(b).  The charge stems from the November 22, 2009, search of the defendant's belongings by Refuge Officer Gregory Burgess at the Colusa Wildlife Refuge.  The facts surrounding the incident are as follows.

On the day in question Officer Burgess and California Game Warden Nate Stebbins were carrying out "hunter compliance checks[2]" from 4:30 a.m. to 2:00 p.m. to ensure that hunters entering the field at the Colusa Wildlife Refuge were in compliance with the law. Just before 6:00 a.m. defendant Azevedo and his hunting companion, Nigel Smith, were on their way to the pond where they were assigned to hunt that day when they encountered Game Warden Stebbins.  Stebbins advised the two that they were on a county road which was not the proper route by which to access the field.  Shortly thereafter Refuge Officer Burgess joined and requested Azevedo's hunting license.  Azevedo complied.  Officer Burgess kept the license and stated that the

---

[1] To the extent any material facts are disputed by the parties, this statement of facts represents the court's factual findings based upon the evidence received at the evidentiary hearing.

[2] Apparently referred to by hunters as a "shell check."

2

officers were conducting hunter compliance checks and would need to pat down Azevedo.[3]  Azevedo responded by putting his backpack and several items from his pockets, including a hard-pack of cigarettes, on the ground in front of him.  After patting down Azevedo, Burgess then opened the cigarette pack and discovered a half-burned marijuana cigarette about which he questioned Azevedo.  Burgess then searched Azevedo's backpack and discovered an extra shell.[4]  Burgess warned Azevedo about possessing more shells then legally allowed, cited him for the violation of 50 C.F.R. § 27.82(b)(2), returned his hunting license and ejected Azevedo and Smith from the refuge.

The defendant moves to suppress all evidence seized, including any statements made, on the grounds that the warrantless search of his belongings was an unreasonable, non-consensual search.

In opposing the motion to suppress, the government initially took the positions that Azevedo had consented to each aspect of the search, including that of the pack of cigarettes.  In

---

[3] Based upon the credible testimony of Azevedo and Smith, the court finds that Officer Burgess did not ask Azevedo for consent to search nor did Azevedo provided consent to any search. Rather, Burgess simply announced that he was conducting hunter compliance checks and proceeded to search. Although Officer Burgess and Game Warden Stebbins generally described their encounter with defendant Azevedo, and with other hunters that day, as "consensual," taken as a whole, their testimony was not inconsistent with the court's finding in this regard. Officer Burgess estimated that they performed as many as thirty to fifty compliance checks that day. Game Warden Stebbins testified that the two officers, as part of their hunter compliance checks, were looking for violations relating to hunting licenses, firearms, ammunition (including the correct number of shells), alcohol and controlled substances. The court fully credits the officers' testimony in this latter regard.

[4] Azevedo was found to have twenty-six shells, instead of the maximum allowed number of twenty-five.

supplemental briefing, submitted after the court indicated that it would find a lack of affirmative consent on the part of the defendant, the government argues that defendant Azevedo's consent to the search should be implied from: (1) his failure to object to Officer Burgess's actions; or (2) from his entry on to the National Wildlife Refuge to engage in the heavily regulated activity of hunting.

**ANALYSIS**

For the reasons set forth below, the court concludes that the government has not established implied consent justifying the warrantless search under the facts of this case.

Of course, it is the prosecution that bears the burden of justifying a warrantless search. United States v. Davis, 332 F.3d 1163, 1168, n.3 (9th Cir. 2003); United States v. Johnson, 936 F.2d 1082, 1084 (9th Cir. 1991). Moreover, "[t]he existence of consent to search is not lightly to be inferred, and is a question of fact to be determined from the totality of the circumstances." United States v. Patacchia, 602 F.2d 218, 219 (9th Cir. 1979) (quoting Schneckloth v. Bustamonte, 412 U.S. 218, 248-49 (1973)).

At the outset, the court rejects the governments argument that Azevedo's failure to object to the pat-down and search of his belongings somehow inferred his consent to the search. Under the Fourth Amendment, "the government may not show consent . . . from a defendant's failure to object[.]" Lopez v. Mukasey, 536 F.3d 1012, 1017 (9th Cir. 2008)(quoting United States v. Shaibu, 920 F.2d 1423, 1427 (9th Cir. 1990)); United States v. Albrektsen, 151 F.3d 951, 955 (9th Cir. 1998) (evidence that a suspect moved aside to avoid contact

4

1 with entering officers insufficient to establish implied consent); see
2 also Bumper v. North Carolina, 391 U.S. 543, 548-49 (1968) (voluntary
3 consent requires more than the mere acquiescence to lawful authority).
4 Here, the testimony establishes that Azevedo did no more than to
5 acquiescence to a display of authority by a law enforcement officer.
6 He did not consent to the search of his belongings either
7 affirmatively nor by his actions in response to the direction of
8 Officer Burgess.

9     Resolution of this motion therefore turns on whether by his
10 entry onto the National Wildlife Refuge to hunt, Azevedo thereby gave
11 his implied consent to a search for purposes of enforcing all
12 applicable laws and regulations.  The government argues that hunting
13 in general is a heavily regulated activity and that all hunters are
14 aware of compliance checks.  The government also argues that various
15 provisions of Title 50 C.F.R., state law, brochures, training
16 booklets, and the "Harvest Record" permit issued to those hunting at
17 the Colusa National Wildlife Refuge advise hunters of what they may
18 and may not do (including that they ay not possess controlled
19 substances) and that they may be subject to ejection if they violate
20 those provisions.  Thus, the government concludes, just like an
21 airline passenger who elects to fly thereby subject himself to search
22 upon entering the security checkpoint outside the gate area, defendant
23 AZEVEDO had two options: enter the refuge and subject himself to
24 possible search or not hunt.  The government's argument misses the
25 mark and is unpersuasive.
26 /////

1  Cases such as those relied upon by the government all
2 involve instances where individuals are warned or put on notice in
3 some way that if they elect to proceed, they will be subject to
4 search.[5]  See United States v. Aukai, 440 F.3d 1168, 1180 (9th Cir.
5 2006)(implied consent to secondary search by walking through
6 magnetometer at airport security checkpoint in part because "[t]here
7 is no doubt that Aukai was on notice that his person could be
8 searched"); Morgan v. United States, 323 F.3d 776, 778 (9th Cir.
9 2003)(noting that military bases warn of the possibility of search as
10 a condition of entry which may result in implied consent to search by
11 those seeking entry and remanding for a determination of whether
12 implied consent was present); United States v. Miner, 484 F.2d 1075,
13 1076 (9th Cir. 1973)(implied consent to search by one boarding a plane
14 who admitted he had seen signs warning that all passengers and their
15 baggage were subject to search and that he knew what the signs meant);
16 see also United States v. Ellis, 547 F.2d 863, 866 (5th Cir. 1977)
17 (consent to search found because defendant's entry onto the military
18 base was specifically conditioned upon his consent to search according
19 to the terms of the visitor's pass he was issued and which he
20 admittedly reviewed and displayed on his windshield.)  Without
21 implied consent, the warrantless search in this case was unlawful.[6]

---

[5] Not merely put on notice of what conduct is permitted.

[6] Indeed, although the giving of notice to an individual of a potential for search followed by voluntary conduct by that individual subjecting one to search are relevant factors, courts confronting claims of implied consent in contexts distinguishable from this one have been reluctant to uphold warrantless searches based simply on actions taken in the light of posted notice.  See Ferguson v. City of

1 See United States v. Carson, 793 F. 2d 1141, 1145, 1155-58 (10th Cir.
2 1986) (warrantless search of a hunter's hunting pail covered by a vest
3 was in violation of the Fourth Amendment but subsequent consent to
4 search by the defendant found to purge the evidence of that primary
5 illegality); United States v. Hunnicutt, No.1:05-MJ-00241, 2006 WL
6 91765, at * W.D. N.C. Jan 13, 2006) (motion to suppress granted where
7 evidence of possession of a controlled substance was seized at a State
8 Wildlife Commission hunting license and game violation checkpoint that
9 was operated without a written plan, without warning signs or any
10 indicia indicating the purpose of the stop to motorist).

11     Here, the government is forced to concede that there are no
12 statutes, no regulations, no signs, and no literature of any kind
13 putting those who enter the Colusa National Wildlife Refuge to hunt on
14 notice of a potential for search if they elect to enter.[7]  The
15 "Harvest Record" permit issued to hunters for that refuge likewise
16 contains no such notice or warning.  The government has simply offered
17 no evidence in support of its claim in this case that Azevedo gave his
18 implied consent to search by entering the refuge to hunt. Therefore,

---

Charleston, S.C., 308 F.3d 380, 399 (4th Cir. 2002); McGann v. Northeast Illinois Regional Commuter, 8 F.3d 1174, 1179-80 (7th Cir. 1993); United States v. Graham, 117 F. Supp. 2d 1015, 1020 (W.D. Wash. 2000) (ferry terminal search).

[7] This is not to suggest that it would be inappropriate to seek implied consent to search in connection with obtaining a permit to hunt on the Colusa National Wildlife Refuge.  The government obviously has a very legitimate interest in ensuring public safety on such property that would be advanced by taking every reasonable precaution to make sure all laws and regulations, including those related to possession of alcohol and controlled substances, are being complied with by those engaged in the potentially dangerous activity of hunting.

all evidence seized as a result of the search of Azevedo and his belongings, including his alleged statements when confronted with the seized marijuana cigarette, must be suppressed.

**CONCLUSION**

For the reasons set forth above:

1. Defendant's motion to suppress evidence (Doc. No. 4) is GRANTED in its entirety; and

2. The matter is set for Status Conference on August 3, 2010, at 9:00 a.m. in Courtroom No. 27.[8]

IT IS SO ORDERED.

DATED: July 21, 2010.

DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

Ddad1/orders.criminal/azevedo0058oahsuppress

---

[8] The court will waive the defendant's appearance at the status conference if a signed waiver is on file prior thereto.